IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J. KEVIN GARVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 1093 |
| | ) |
| PIPER RUDNICK LLP LONG TERM | ) Judge Joan Humphrey Lefkow |
| DISABILITY INSURANCE PLAN; STANDARD | ) Magistrate Judge Nan R. Nolan |
| INSURANCE COMPANY, a subsidiary of | ) |
| STANCORP FINANCIAL GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff J. Kevin Garvey has filed suit against the Piper Rudnick LLP Long Term Disability Insurance Plan (the "Plan") and the Plan's insurer, Standard Insurance Company, a subsidiary of Stancorp Financial Group, Inc. ("Standard"), to recover disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. Currently before the court is Garvey's motion to compel discovery relating to Standard's possible conflict of interest in making a benefits determination in his case. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Garvey worked as a partner at the law firm of DLA Piper US LLP (formerly known as Piper Marbury Rudnick & Wolfe LLP). At all relevant times, he was a participant in the Plan, which provides long term disability insurance benefits to partners and employees of the firm. Standard serves as the plan administrator and has discretionary authority over claims determinations, as well as responsibility for making payments on valid claims. On March 1, 2004, Garvey reduced his hours to part-time due to arthritis; a herniated disc; lower back pain with a history of laminectomy; stress; sleep disturbance resulting in insomnia; anxiety disorder; adjustment disorder with mixed features; and depressive disorder. Garvey received short term disability benefits under the Plan

from March 1, 2004 to February 28, 2005, at which time he ceased working altogether due to his conditions.

At some point thereafter, Garvey filed a claim for long term disability benefits, stating that he was disabled under the Plan's "Own Occupation Definition of Disability." On May 5, 2005, Standard denied Garvey's claim, finding that he is able to perform the material duties listed in the definition of "Attorney" in the Dictionary of Occupational Titles. Garvey appealed the decision on October 18, 2005, but Standard upheld the denial of benefits on January 5, 2006. Garvey filed suit in the District of Oregon, seeking ERISA benefits and declaratory relief. On Defendants' motion, the Oregon court transferred the case to this district in February 2008. (Doc. 38.)

The parties proceeded with discovery, and on December 2, 2008, Garvey served Defendants with discovery requests relating to a potential conflict of interest in Standard's claim denial. Specifically, Garvey sought information regarding (1) the identities and compensation of Standard's employees and other third-parties responsible for reviewing and denying his claim; (2) Standard's policies and procedures; (3) statistics as to approval/denial/termination rates under the Plan; and (4) Standard's financial information. Defendants objected to all of these requests, insisting that Garvey is not entitled to anything other than the administrative record. Garvey responded with a motion to compel, and the district court has referred the matter to this court for resolution.

**DISCUSSION**

When, as here, a plan administrator has discretionary authority to make benefits determinations, courts generally limit discovery to the administrative record. *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). The Seventh Circuit has cautioned that "discovery is normally disfavored in the ERISA context" and is only available in "exceptional circumstances." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814-15 (7th Cir. 2006). Specifically, the Seventh Circuit has allowed "limited discovery" where a plaintiff can both "identify

a specific conflict of interest or instance of misconduct," and "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at 815.

### A. The *Glenn* Decision

The question presented here is whether the Supreme Court's recent decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008), has any effect on these special discovery rules. The plan in *Glenn* "grant[ed] MetLife (as administrator) discretionary authority to determine whether an employee's claim for benefits [wa]s valid; it simultaneously provide[d] that MetLife (as insurer) w[ould] itself pay valid benefit claims." *Id.* at 2346. The Court found that this dual role creates a structural conflict of interest that "must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 2348 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The Court confirmed that the standard of review remains deferential, but stressed that the reviewing judge must "take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." *Id.* at 2350. *See also Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009).

The Court went on to explain that "conflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 2351. In the Court's view, "[t]he conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* At the same time, the conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* The Court found that the Court of Appeals properly set aside MetLife's discretionary decision in that case, based in part upon the fact that "MetLife had encouraged Glenn to argue to the Social

3

Security Administration that she could do no work, received the bulk of the benefits of her success in doing so . . . , and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work." *Id.* at 2352.

### B. The Aftermath of *Glenn*

Defendants spend much time arguing that the standard of review has not changed following *Glenn*. Garvey does not suggest otherwise. Indeed, in *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444 (7th Cir. 2009), the Seventh Circuit applied the abuse-of-discretion standard to a plan's discretionary decision to deny benefits. *Id.* at 449. *See also Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860-61 (7th Cir. 2009); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009) ("[T]he Court's decision in *Glenn* did not create a new standard of review . . . for claims involving a conflict of interest.") The real dispute is whether *Glenn* has any impact on ERISA discovery rules. Courts across the country and in this circuit are currently divided on the issue.

#### 1. Courts Questioning *Semien* and Allowing Discovery

In this circuit, several courts have allowed discovery regarding inherent conflicts of interest. In *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Mgmt. Co.*, No. 1:07-cv-0483-DFH-DML, 2008 WL 5070434 (S.D. Ind. Nov. 26, 2008), the court found that *Glenn*, though not a case about discovery, "necessarily requires that parties are allowed to conduct discovery outside of the administrative record." *Id.* at *1. In the court's view, "the previous teachings of the Seventh Circuit [e.g., *Semien*] that made discovery in such cases nearly impossible to obtain . . . appear to be superseded" now that evidence of a conflict of interest "will be relevant, and . . . is unlikely to appear in sufficient detail in the administrative record, at least in pending cases." *Id.* Before ruling on the scope of such discovery, however, the court gave the plan an opportunity to submit supplementary evidence showing active steps it took to promote accuracy and reduce bias. *Id.* at *2. In a subsequent opinion in that case, the court held that the plaintiff was entitled to

4

discovery relating to whether the employer rewarded or punished reviewers based on the percentage of claims they approved or denied. *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Mgmt. Co.*, __ F. Supp. 2d __, 2009 WL 2390355, at *1 (S.D. Ind. Aug. 3, 2009).

Another court from the Southern District of Indiana was similarly skeptical as to the continuing validity of *Semien* following *Glenn*, and opined that, in any event, conflicts of interest "satisfy *Semien*'s prerequisites as a matter of law." *Fischer v. Life Ins. Co. of N. Am.*, No. 1:08-cv-0396-WTL-TAB, 2009 WL 734705, at *3 (S.D. Ind. Mar. 19, 2009). The court thus allowed the plaintiff to conduct discovery "targeted at examining [the fiduciaries'] loyalty." *Id.* at *4. This included information related to the identities, compensation and relationship of individuals who were responsible for reviewing and denying the plaintiff's claim; statistical information regarding the approval/denial/termination of benefits under the plaintiff's insurance plan; the claims payment history for employees of the plaintiff's employer; underwriting material for the plaintiff's claim and for her plan generally; documents reflecting plan procedures and employee training; documents relating to the relationship between the insurance company and third-party reviewers; documents relating to employee compensation structures; and steps the insurance company took to ensure the accuracy of its benefits decisions. *Id.* at *4-5. The court did not, however, allow discovery of the insurance company's personnel files or financial information, finding this to be "particularly sensitive" and "less connected to the conflicts analysis." *Id.* at *5.

Even more recently, the court in *Hughes v. CUNA Mutual Group*, 257 F.R.D. 176 (S.D. Ind. 2009), agreed that "*Glenn* makes clear that conflicts of interest are relevant (even though the precise weight may vary from case to case)." *Id.* at 179. The court opined that the Supreme Court "expressly contemplated an evidentiary showing on" such conflicts and allowed the plaintiff "to explore CUNA's conflict-of-interest in discovery." *Id.* In reaching this conclusion, the court acknowledged the importance of controlling discovery costs, but declined to delay discovery in the

case because (1) CUNA had made no showing that the merits of its case were so strong that the requested discovery would be a waste of time and money; and (2) CUNA selectively provided information showing the steps it took to reduce the risk of bias, and "[o]ur adversarial system generally disfavors selective disclosure." *Id*. *Cf. Creasey v. Cigna Life Ins. Co. of New York*, 255 F.R.D. 483, 484 (S.D. Ind. 2009) ("[I]n a case where the defendant admits that it has . . . a conflict [of interest], . . . the better course is for the court to examine the merits of the claim before determining whether further discovery is necessary on the degree to which the conflict may exist.")

### 2. Courts Following *Semien* to Limit Discovery

Other courts in this jurisdiction have continued to follow *Semien* in determining whether to allow discovery. The court in *Marszalek v. Marszalek & Marszalek Plan*, No. 06 C 3558, 2008 WL 4006765 (N.D. Ill. Aug. 26, 2008), relied on *Semien* to reject the plaintiff's request for discovery into the extent of the administrator's conflict of interest. *Id*. at *2. The plaintiff argued, without citation and in a motion to reconsider an unfavorable summary judgment ruling, that "the restrictions imposed on discovery by *Semien* no longer make sense." The court found this position "not supported by established case law." *Id*. Turning to the specific suspicions of a conflict, the court held that the fact that the insurance executives received bonuses in excess of $1 million was not an "exceptional circumstance warranting discovery" under *Semien*. *Id*. at *3. The court also rejected the plaintiff's wholly unsupported speculation that the insurance company "somehow concealed the existence of lawsuits filed against it, thereby precluding plaintiff and other ERISA claimants from discovering its history of biased claim administration." *Id*. As the court noted, the insurance company actually "acted against its own self interest by amending the terms of the Plan to provide coverage for plaintiff after it discovered he was not a solo practitioner, and therefore was no longer eligible to receive Plan benefits." *Id*.

In *Huss v. IBM Medical and Dental Plan*, No. 07 C 7028, 2009 WL 780048 (N.D. Ill. Mar. 20, 2009), the court followed *Semien* in ordering limited discovery, noting that the plaintiff had

6

"identified a specific conflict of interest . . . and further made a showing that there was good cause to believe limited discovery would reveal a procedural defect in the plan administrator's determination." *Id.* at *6. *See also Munson v. C.H. Robinson Co.*, No. 09 C 495, 2009 WL 1586325, at * 2 (N.D. Ill. June 8, 2009) (citing *Semien* in discussing discovery in the ERISA context). In an unpublished Minute Order, another court found "no basis on which to conclude that the Seventh Circuit's statements in *Semien* are no longer good law after *Glenn*." *Kaplan v. Susquehanna Int'l Group*, No. 08 C 752, slip op., Doc. 40, at 2 (N.D. Ill. Dec. 18, 2008). The court in *Nash v. Life Ins. Co. of N. Am.*, No. 09 C 1357, 2009 WL 1181605 (N.D. Ill. Apr. 29, 2009), agreed, affirming that "the Seventh Circuit requires that the claimant make out a prima facie case showing that there is good cause to believe that limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at *2 (quoting *Semien*, 436 F.3d at 813).

A court in the Southern District of Indiana also concluded recently that *Semien* remains controlling law on the issue of discovery. In *Anderson v. Hartford Life and Accident Ins. Co.*, 2:08-cv-471-WTL-WGH, 2009 U.S. Dist. LEXIS 48853 (S.D. Ind. June 10, 2009), the judge asserted his belief that "he should continue to apply *Semien*'s standard in this Circuit – since that case has yet to be reversed." *Id.* at *7. The court further stated that it would "only add discovery procedures in those exceptional cases where – after a review of the administrative record and the arguments found in the parties' briefs – the extent of the administrator's conflict is a key 'tiebreaking factor.'" *Id. See also Parrilli v. Hartford Life & Accident Ins. Co.*, No. 09 C 769, slip op., Doc. 30, at 3 (N.D. Ill. Sept. 29, 2009) (allowing discovery beyond the claim file where, as in *Glenn*, the insurer insisted that the plaintiff apply for Social Security disability benefits, and then refused to reconsider its denial of benefits when the Social Security Administration found the plaintiff disabled and awarded him benefits).

7

### 3. Courts Outside this Jurisdiction

Garvey stresses that outside this jurisdiction, many courts have allowed discovery into conflicts of interest. In *Stephan v. Thomas Weisel Partners, LLC*, No. C08-01935 MHP, 2009 WL 2511973 (N.D. Cal. Aug. 14, 2009), the court noted that "discovery decisions in this Circuit post-*Glenn* have, by and large, allowed limited and narrowly tailored discovery into both demonstrating and probing conflicts of interest." *Id*. at *9 (citing *Wilcox v. Wells Fargo & Co. Long Term Disability Plan*, 287 Fed. Appx. 602, 603-04 (9th Cir. 2008) (courts must consider a conflict of interest as a factor in reviewing benefits decisions, and such conflict "may be unmasked through discovery.") The court in *Beard v. Wachovia Corp.*, No. 08-cv-02836-ZLW-MEH, 2009 WL 2140225 (D. Colo. July 16, 2009), also observed that "courts in this district and in other districts have allowed limited discovery for the purpose of determining the scope of a conflict of interest." *Id*. at *4 (collecting cases). *See also Kruk v. Metropolitan Life Ins. Co.*, No. 3:07-cv-01533 (CSH), 2009 WL 1481543, at *3 (D. Conn. May 26, 2009) ("District courts within this circuit, and the courts of appeal in other circuits, have . . . concluded that one appropriate avenue for discovery is to identify a conflict of interest.") Of course, none of these courts is bound by the Seventh Circuit's pronouncement in *Semien*, nor do they discuss its application in light of *Glenn*.

### C. Garvey's Case

Having carefully reviewed the relevant case law, the court must now decide whether limited discovery is available to Garvey on the issue of Standard's structural conflict of interest. Defendants ask the court to disregard the Southern District of Indiana cases allowing such discovery, arguing that they were all decided before the Seventh Circuit's most recent pronouncement in *Marrs v. Motorola, Inc.*, 577 F.3d 783 (7th Cir. 2009). The plaintiff in *Marrs* sought to recover disability benefits under ERISA, and argued that the court should give no weight to the administrator's interpretation of the plan due to an inherent conflict of interest. *Id.* at 785. The court disagreed, noting that "[i]t is . . . not the existence of a conflict of interest – which is a

given in almost all ERISA cases – but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Id.* at 789. The court found "no indications . . . that the plan administrator labored under a conflict of interest serious enough to influence his decision consciously or unconsciously," and affirmed the denial of benefits. *Id.*

To the extent *Marrs* does not address the issue of discovery in ERISA cases, it is not clear how it supports Defendants' position. Nevertheless, every Illinois court considering the issue to date has concluded that *Semien* remains controlling law in this circuit. This court follows suit and analyzes Garvey's request for discovery under the two-part *Semien* test. In the court's view, such an approach is consistent with the Seventh Circuit's most recent observation that the mere existence of a conflict of interest is not critical; rather, there must be some indication that the conflict was serious enough to influence the benefits decision. *Marrs*, 577 F.3d at 789. *Semien*'s requirement of a prima facie showing of a procedural defect ensures that discovery is limited to situations where there are signs of a significant conflict, which in turn furthers ERISA's goal to provide inexpensive and expeditious resolution of benefits disputes. 436 F.3d at 815.

### 1. Specific Conflict of Interest

Under *Semien*, Garvey must first "identify a specific conflict of interest or instance of misconduct." 436 F.3d at 815. The court is satisfied that Garvey has met this burden by demonstrating that Standard has an inherent conflict of interest as both administrator of the Plan and payor of benefits.[1] *Glenn*, 128 S.Ct. at 2348.

### 2. Prima Facie Showing of Good Cause

The more difficult question is whether Garvey can "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in [Standard's]

---

[1] The court rejects Garvey's argument that claims personnel act under a conflict of interest merely because their job descriptions include a mandate to try and contain claims liability. Claims containment is presumably a general goal of all insurance companies and their staff.

9

determination." *Semien*, 436 F.3d at 815. Garvey first stresses that DLA Piper self-insures short term disability ("STD") benefits under the Plan, while Standard is responsible for paying long term disability ("LTD") benefits. According to Garvey, Standard found him to be continuously disabled from his own occupation when he applied for STD benefits (paid for by DLA Piper), but then found him to be not disabled when he applied for LTD benefits (paid for by Standard) immediately thereafter. This anomalous result, Garvey argues, occurred even though the definition of disability had not changed, and his degenerative conditions had worsened. (Pl. Mem., at 2, 11.)

Defendants respond that Garvey "is not being forthright with the Court." (Def. Resp., at 17.) They claim that Garvey never submitted a claim for STD benefits to Standard and that Standard never evaluated or approved any such claim. Rather, DLA Piper approved the claim internally "in conjunction with Garvey's transition to retirement." (*Id*. at 17-18.) The problem with this assertion is that Defendants fail to provide any supporting documentation. Contrary to Defendants' suggestion, Standard's Long Term Disability Benefits Employer's Statement does not demonstrate that DLA Piper placed Garvey on short-term disability "with the understanding that he would retire on March 1, 2005, when his short-term disability benefits ended." (*Id*. at 1.) The cited document merely states that Garvey was "currently working 50% schedule" and "will go to 100% disability 3/1/05." (Admin Rec., at STND093-00474.)

Defendants fare no better by citing to an October 18, 2005 letter Garvey sent to Standard, in which he states, "Piper Rudnick approved my claim and placed me on short-term disability as of March 1, 2004." (Admin. Rec., at STND983-00554.) Notwithstanding this statement from Garvey, the plan document itself makes clear that Standard is the Claims Administrator for the STD plan, and "shall receive, process, investigate and evaluate claims for benefits." (Ex. B to Pl. Mem., at 1, 4.) This certainly raises a question as to whether Standard denied LTD benefits to Garvey because its own assets were at risk. Notably, it appears that the STD and LTD plans have nearly identical definitions of "Own Occupation" disability. (Ex. B to Pl. Mem.; Ex. A to Def. Resp.) (a person is

"Own Occupation" disabled if he is "unable to perform with reasonable continuity the Material Duties of [his] Own Occupation.")

Garvey also points to the fact that he received benefits under his private disability policy with Unum Provident ("Unum"), "under a virtually identical own occupation definition of disability, based on the same medical impairment, the same medical records and the same date of disability." (Pl. Mem., at 2, 11.) Defendants disagree that Standard evaluated the same information as Unum, noting that Standard obtained opinions from six consulting physicians in making its decision (Dr. Steven Beeson, Dr. David Waldram, Dr. Mark M. Shih, Dr. Bradley J. Fancher, Dr. Linda M. Toenniessen and Dr. Esther Gwinnell). (Def. Resp., at 8-9, 18 n.9.) Garvey responds that there is evidence of procedural irregularities as to several of those physicians. For example, Standard states that it relied upon a medical opinion from Dr. Fancher in rejecting Garvey's claim for benefits, but the administratl've record contains no such opinion. (Admin. Rec., at STND983-00465, Def. Resp., at 18 n.9.) Rather, claims analyst Darci Eisele recorded Dr. Fancher's purported findings in a brief Physician Consultation note. (*Id.* at STND983-467.)

Garvey further notes that another analyst, Robin Hochstetler, met with Dr. Waldram and listened to his dictated report before the report was transcribed. (*Id.* at STND983-00415.) Garvey claims that "[t]he fact that the claims analyst listened to Dr. Waldram's transcription before it was transcribed leaves us to believe that Dr. Waldram's opinion was impacted by this communication." (Pl. Reply, at 9.) The court does not find this speculation particularly persuasive evidence of procedural irregularity. Also minimally compelling is the fact that a Minnesota District Court recently found Dr. Gwinnell's reasoning in another case to be "deeply flawed." *Huberty v. Standard Ins. Co.*, No. 06-cv-2388, 2008 WL 783407, at *37 (D. Minn. Mar. 25, 2008).

It does appear that Standard regularly consults with all six of the above physicians, and the Supreme Court has recognized that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve

their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). Defendants note, however, that "compensat[ing] physicians for their consulting services is not, in and of itself, sufficient to establish a conflict of interest worthy of further discovery." *Semien*, 436 F.3d at 814. *See also Broeski v. Provident Life and Accident Ins. Co.*, No. 06 C 3836, 2007 WL 1704012, at *2 (N.D. Ill. June 8, 2007) ("The fact that a doctor is regularly consulted by an insurance company (or defense interests more generally) does not, *ipso facto*, render the doctor biased.")

In the court's view, evidence that Standard granted benefits to Garvey until its own funds were at risk, despite no change in the definition of disability, suffices as a prima facie showing of good cause to believe that limited discovery will reveal a procedural defect in the plan administrator's determination.

### 3. Specific Discovery Requests

Having concluded that Garvey is entitled to discovery regarding Standard's conflict of interest, the court must next determine the proper scope of that discovery. Garvey's written discovery requests seek information regarding (1) the identities and compensation of Standard's employees and other third-parties responsible for reviewing and denying his claim; (2) Standard's policies and procedures; (3) statistics as to approval/denial/termination rates under the Plan; and (4) Standard's financial information.

With respect to the first category, Defendants object only to discovery relating to the compensation paid to consulting physicians and the frequency of their consultations. Defendants stress that "[t]here is nothing inherently nefarious about an outside physician's consulting relationship with an ERISA administrator." (Def. Resp., at 23.) Garvey does not disagree, but directs the court to *Fischer*, in which the court considered the proper scope of discovery as "guided by the Supreme Court's decision in *Glenn*, the Seventh Circuit's lingering admonition in *Semien*, and the post-*Glenn* practice of other district courts." 2009 WL 734705, at *3. The court allowed

12

discovery into the identities, compensation and relationship of individuals who were responsible for reviewing and denying the plaintiff's claim, finding the information "reasonably related to the Plaintiff's desire to . . . satisfy herself that LINA has not allowed its own financial self-interest to interfere with its obligation to review her claim accurately." *Id.* at *5.

The cases Defendants cite in opposition to Garvey's position address whether paying a consultant suffices to create a conflict of interest; none considers whether discovery of such payments is permissible after a sufficient conflict has been established. *See, e.g., Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575 (7th Cir. 2006) ("Paying for a legitimate and valuable service in order to evaluate a claim thoroughly does not create a review-altering conflict."); *Smith v. Accenture U.S. Group Long Term Disability Ins. Plan*, No. 05 C 5942, 2006 WL 2792695, at *1 (N.D. Ill. Sept. 27, 2006) ("The fact that a plan administrator has compensated physicians for their services is not, in and of itself, sufficient to establish a conflict of interest worthy of further discovery.") On the facts presented, the court finds that the requested discovery is appropriate and grants Garvey's motion to compel the identifications and compensation of consulting physicians involved in reviewing and denying his claim.

As for other employees and third-parties responsible for reviewing and denying Garvey's claim, the Seventh Circuit recently opined that "the terms of employment of the staff that decides benefits claims might . . . affect a determination of how likely it is that those employees would slant their decisions in favor of their employer's short-term interest in minimizing his benefits expense." *Marrs*, 577 F.3d at 789. *Cf. Glenn*, 128 S.Ct. at 2351 (insurers can reduce the impact of a conflict by "imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.") Garvey's request for such discovery is also granted. Any request for employee personnel files, however, is denied. *See Fischer*, 2009 WL 734705, at *5 (rejecting request for personnel files, which the court described as "particularly sensitive" and "less connected to the conflicts analysis.")

Defendants next object to discovery regarding claim approval and denial rates. Defendants argue, without citation, that "[t]he propriety of a physician's conclusions is determined based on the medical facts of each case, and not according to the law of averages." (Def. Resp., at 24.) They then resort to challenging the merits of Garvey's disability claim. (*Id.* at 24-25.) The court again finds that the requested discovery is appropriate. *See Fischer*, 2009 WL 734705, at *5 (allowing discovery of statistical information regarding benefit "approval/denial/termination rates" under the plaintiff's insurance plan).

Defendants do not raise specific objections to disclosing Standard's policies and procedures (category 2) or its financial information (category 4). The former discovery requests are granted. *See Fischer*, 2009 WL 734705, at *5 (allowing discovery relating to plan procedures and employee training). *See also United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") Garvey's request for financial information, however, is denied. *Fischer*, 2009 WL 734705, at *5 (financial information "in addition to being particularly sensitive, [is] less connected to the conflicts analysis.")

Defendants finally challenge Garvey's requests to admit, characterizing nos. 3, 5, 7, 9, 11, 13, 22, 23, 27 and 38 as argumentative and "not narrowly tailored to obtain evidence of a conflict." (Def. Resp., at 25.) Garvey concedes the point as to request nos. 22, 23, 27 and 38, which are now withdrawn. (Pl. Reply, at 13.) The court grants Garvey's motion to compel as to the remaining requests to admit.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel Discovery on Conflict of Interest [60] is granted in part and denied in part.

ENTER:

Dated: October 9, 2009

_____
NAN R. NOLAN
United States Magistrate Judge