UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J. KEVIN GARVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 08 C 1093 |
| vs. | ) |
| | ) Judge Feinerman |
| PIPER RUDNICK LLP LONG TERM DISABILITY INSURANCE PLAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff J. Kevin Garvey brought this action against the Piper Rudnick LLP Long Term Disability Insurance Plan, seeking to recover disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Garvey worked as an attorney and partner in the Chicago office of the law firm now known as DLA Piper, and was insured for disability benefits under the Plan pursuant to Group Long Term Disability Insurance Policy No. 641252-A, which was issued on January 1, 2001. On January 6, 2005, Garvey applied for long-term disability benefits through Standard Insurance Company, the Plan's administrator and underwriter. Standard denied the claim on May 5, 2005. Garvey appealed the denial on October 18, 2005, and Standard denied the appeal on January 5, 2006.

Garvey has moved for an order regarding the standard governing the court's review of Standard's decision. Doc. 133. There are two possibilities: "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case "a deferential standard of review" is applied.

*Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Under deferential review, "the plan's decision must be sustained unless arbitrary and capricious," with the court's review "limited to the administrative record." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). In *Krolnik*, the Seventh Circuit expressed the view that the term "*de novo* review" is "misleading" in the ERISA benefits denial context, suggesting that the term "independent decision" is more apt. *Ibid*. But nothing of substance turns on the different terminology, and because *Conkright* and *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010), both post-dating *Krolnik*, use the term "*de novo* review," this opinion will as well.

The Plan, as issued, indisputably included a discretionary clause. This ordinarily would result in the court applying the deferential standard of review. The matter is complicated, however, by the fact that the Illinois Department of Insurance, prior to Standard's denial of Garvey's appeal, promulgated a regulation prohibiting discretionary clauses in disability plans and other health insurance contracts:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Admin. Code § 2001.3 (2010); 29 Ill. Reg. 10172 (effective July 1, 2005). The express purpose of Section 2001.3 in prohibiting discretionary clauses was to ensure that courts would apply *de novo* review in ERISA cases where the denial of benefits is challenged. *See* 29 Ill. Reg. 10173 ("The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting

such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard.").

Decisions from this District consistently have held that Section 2001.3 applies only to plans issued or renewed after July 1, 2005, the provision's effective date. *See Golden v. Guardian Life Ins. Co. of Am.*, 2010 WL 3951508, at *1 (N.D. Ill. Oct. 4, 2010) (referring to "the Department's non-retroactive regulation"); *Haines v. Reliance Standard Life Ins. Co.*, 2010 WL 2607257, at *1 (N.D. Ill. June 23, 2010); *Golden v. Guardian Life Ins. Co. of Am.*, 2010 WL 2293390, at *7 (N.D. Ill. June 1, 2010); *Holmstrom v. Metro. Life Ins. Co.*, 615 F. Supp. 2d 722, 740 (N.D. Ill. 2009), *rev'd on other grounds*, 615 F.3d 758 (7th Cir. 2010); *Marszalek v. Marszalek & Marszalek Plan*, 485 F. Supp. 2d 935, 938 (N.D. Ill. 2007) ("[T]he regulation … is not retroactive and therefore, it fails to invalidate discretionary clauses in insurance policies issued prior to [the effective date]."); *Williams v. Group Long Term Disability Ins.*, 2006 WL 2252550, at *3 (N.D. Ill. Aug. 2, 2006); *Guerrero v. Hartford Fin. Servs. Grp.*, 2006 WL 1120526, at *7 n.3 (N.D. Ill. Apr. 26, 2006). Garvey does not dispute this proposition of law, and does not dispute that the relevant policy was issued on January 1, 2001. He nonetheless offers two reasons why Section 2001.3 applies to his particular circumstances.

Garvey first contends that because the policy "renewed" on January 1, 2006, it is subject to Section 2001.3, and that because Standard did not deny his appeal until January 5, 2006, the "renewed" policy (which by operation of law would not have a discretionary clause) governs here. To support his initial premise—that the policy renewed on January 1, 2006, subjecting it to Section 2001.3—Garvey's motion cites "ECF No. 85-6, Pages 18-57," which are forty dense pages of plan documents. Doc. 133 at 2; *see also* Doc. 134 at 1 (same). The motion does not point to any particular page or passage indicating that the policy did, in fact, renew on January 1,

2006. The Plan's response brief, noting the omission, argues that "[t]here is no evidence that [the] Plan is an 'annually renewable' contract that renewed on January 1, 2006 and created a new ERISA plan." Doc. 142 at 12. Having been given another opportunity to point to particular language supporting his view that the policy renewed on January 1, 2006, Garvey's reply brief (Doc. 143) remained silent, thus forfeiting the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008).

The result would have been the same even without Garvey's forfeiture. While a few of the forty pages cited by Garvey suggest that the policy was amended on January 1, April 1, and April 8 of various years (Doc. 85-6 at 18-23), none shows an amendment made on January 1, 2006, and none suggests that the policy renewed every January 1 or, specifically, on January 1, 2006. Accordingly, the relevant policy did not "renew" on January 1, 2006, which means that the policy is not subject to Section 2001.3 based on a supposed renewal occurring on that date. *See Golden*, 2010 WL 3951508, at *2 ("[Plaintiff]'s primary contention is a familiar one—that the parties *renewed* the benefits Plan, and thus created a new contract that was subject to the Department's regulation against discretionary clauses. The Court disagrees. … [T]he Plan in this case was not subject to the Department's regulation because the Plan was *issued* prior to the regulation's effective date; it was not *renewed* as [claimant] suggests.").

Garvey's second argument focuses on two events that occurred this past year. In June 2010, the Illinois Director of Insurance issued Company Bulletin 2010-05, which advised regulated entities of the Director's view that Section 2001.3 applies not only to policies issued or renewed on or after its effective date of July 1, 2005, but also to policies issued before that date. *See* 2010 WL 2609380 (June 28, 2010). In December 2010, Standard issued a memorandum to its "Illinois Policyholders with … Group Long Term Disability," which stated: "In accordance

with this new Bulletin [2010-05], we are removing the Allocation of Authority provision from all group policies and certificates that were issued prior to July 1, 2005." Doc. 135-1 at 1.

None of this has any bearing here. Garvey has not argued, let alone shown, that *his* policy was amended to remove the discretionary clause. The policy endorsements he filed with the court (Doc. 135-1 at 2-4) are for Group Policy 906255-A, not for Group Policy No. 641252-A, which is his policy (Doc. 49, ¶ 4). To eliminate any doubt, the Plan confirmed that Standard did not remove the discretionary clause from Garvey's policy, given that the policy was issued in Maryland rather than Illinois. *See* Doc. 142 at 9; Doc. 142-1 at 2.

Garvey appears to suggest that because Company Bulletin 2010-05 required Standard to amend Garvey's policy, the policy should be deemed by operation of law to have been stripped of the discretionary clause. *See* Doc. 143 at 2-3. But the Company Bulletin, insofar as it purports to apply Section 2001.3 retroactively to policies issued before July 1, 2005 and not thereafter renewed, does not have the force of law. In Illinois, a state agency's interpretation of its own regulation "is a question of law, which receives *de novo* review." *Sartwell v. Bd. of Trs. of Teachers' Retirement Sys.*, 936 N.E.2d 610, 616 (Ill. App. 2010). The cases cited above unanimously hold that Section 2001.3 does not apply retroactively; Garvey has cited, and the court has found, no contrary authority. Although some deference is owed an agency's interpretation of a regulation when the interpretation rests on the agency's "experience and expertise," *Dusthimer v. Bd. of Trs. of Univ. of Ill.*, 857 N.E.2d 343, 350 (Ill. App. 2006), the retroactivity of Section 2001.3 is a purely legal matter falling squarely within the purview of the courts. *See ibid*. ("all the experience and expertise in the world cannot change what a regulation plainly says").

The point is moot in any event. Even if Standard removed or is deemed by operation of law to have removed the discretionary clause from Garvey's policy in December 2010, the final denial of benefits occurred in January 2006. At that juncture, for the reasons stated above, the discretionary clause was part of the policy and properly so. Settled law holds that the deferential standard of review applies if the administrator denies benefits at a time when the policy had a discretionary clause, even if the policy had no such clause at other times. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773-74 (7th Cir. 2003); *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health and Welfare Plan*, 298 F.3d 191, 196-97 (3d Cir. 2002); *Agin v. Liberty Life Assur. Co. of Boston*, 2006 WL 1722228, at *10-11 (W.D. Mich. June 21, 2006). Garvey himself agreed, at least before Standard issued the December 2010 memorandum, that "the controlling plan must be the plan in effect at the time the benefits were denied." Doc. 134 at 5 (citing *Hackett*). It follows that the (supposed) removal of the discretionary clause from the policy in December 2010, assuming it occurred, would not have affected the standard governing the court's review of a denial of benefits made final nearly five years earlier.

Accordingly, because the policy's discretionary clause remains in force, the court will apply the deferential standard of review to Standard's denial of Garvey's application for benefits. Given this disposition, there is no need to address the Plan's contention that Section 2001.3 is preempted by ERISA and therefore invalid, or Garvey's contention that Standard's December 2010 memorandum concedes the validity of Section 2001.3.

March 25, 2011

United States District Judge